400 So.2d 1042 (1981)
Charles Benjamin DEDMON, Appellant,
v.
STATE of Florida, Appellee.
No. WW-51.
District Court of Appeal of Florida, First District.
July 10, 1981.
Michael E. Allen, Public Defender, David J. Busch, Asst. Public Defender, and David U. Tumin, Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
JOANOS, Judge.
Appellant appeals his convictions and sentences for attempted first degree murder with a firearm and possession of a firearm by a convicted felon. He raises four points *1043 for review. We disagree with appellant's arguments and affirm as to all four points.
First, appellant argues that the trial court abused its discretion when it denied appellant's motion to sever the second count, possession of a firearm by a convicted felon, from the first count, attempted first degree murder with a firearm. He urges that the trial judge was required to grant the severance under Florida Rule of Criminal Procedure 3.152(a)(2)(i) which provides that a severance of related offenses should be granted "... upon a showing that such severance is appropriate to promote a fair determination of a defendant's guilt or innocence of each offense... ." This argument is without merit. In Panzavecchia v. State, 311 So.2d 782 (Fla.3d DCA 1975), that court refused to find that the trial court had abused its discretion in denying a motion to sever a murder count from a count for possession of a firearm by a convicted felon. The court reasoned that if the argument that severance was required was accepted, severance would be required any time a convicted felon is charged with possession of a firearm and some other crime. Refusing to go that far, the court looked at the circumstances of the particular case and ruled that no prejudice had resulted from the denial of severance. The Florida Supreme Court in Menendez v. State, 368 So.2d 1278, 1280 (Fla. 1979) also subscribed to the "abuse of discretion" standard in considering a trial judge's refusal to sever the trial of co-defendants. The point is that the trial judge has discretion in matters of this kind. In the case before us, consolidation of the two counts presented the most practical and efficient method of processing the case because the evidence of possession was intertwined and a part of the evidence of the act of shooting. There was no reason to have duplicative proceedings. Further, the potential for prejudice was minimized by the stipulation entered into by the parties in which the jury was told that the appellant had been previously convicted of a felony insofar as it related to the possession count but the prior crime was not named. In addition, when we consider the eyewitness testimony, appellant's admissions, and the evidence connecting appellant with the weapon used in the crime, we can see no prejudicial effect on the jury with regard to the attempted murder count in having the matters tried together.
Appellant's second argument is that a handgun should have been suppressed because of an unlawful search in violation of the fourth and fourteenth amendments of the United States Constitution and Article I, Section 12, Florida Constitution (1979). Although he makes no challenge to the probable cause for his arrest, he urges that the search in connection with his arrest was invalid under the recent decision in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) in which the United States Supreme Court held that absent exigent circumstances, the police may not make a warrantless, non-consensual entry into a suspect's home in order to make a routine felony arrest. The Payton decision was issued after the activity at issue here had occurred. Therefore, appellee raised a question as to the retroactive application of Payton. Whether retroactive or not, the Payton case does not control the outcome in this case.
The evidence before the trial judge on the motion to suppress included the following. On the morning following the shooting, Officer Estraviz received a call from the headquarters dispatcher that an informant had called and said that the appellant had been involved in a shooting on the north side of town the previous day and that he was staying at a particular house. The officer was given Dedmon's full name, a description of what had occurred at the shooting, and that Dedmon was probably armed and dangerous. Estraviz and several other officers went to the house where Estraviz knocked on the door loudly for about five minutes calling appellant's name. Estraviz heard noises but no voices. After he used the megaphone to call for Dedmon to come out, he was surprised to see two crouched shadows through the window. Dedmon and the second person thereafter came out of the house and were arrested. Two other police officers then immediately *1044 entered the house with guns drawn to make sure that there were no other persons in the house who could harm the officers outside. Both of the other officers testifying and Estraviz stated that they had only been informed of one suspect at that address and were surprised when they became aware of two men. According to all three, the search of the house for persons was solely for their own protection. Inside the house, the officers saw the handgun sought to be suppressed on the bedroom dresser and another gun sticking out from under the sofa cushions.
Although the Payton holding was limited to a determination of the validity of an entry into the home to effect a routine arrest, the rationale requiring exigent circumstances in the absence of a warrant would apply equally to any warrantless entry into the home. Such a requirement does not spring from the Payton case alone. Even before Payton, both Florida and federal courts have held that the post-arrest search of a house cannot be justified as a standard "protective sweep" in order to determine if other persons or weapons are present. According to Newton v. State, 378 So.2d 297 (4th DCA 1980), police officers must have reasonable grounds to believe their security may be jeopardized by others on the premises. In Newton, the police officers testified that the search was "standard procedure;" they could offer no "articulable facts" on which to base a conclusion that there might be other persons present in the house. Because of that the court held the search to be invalid. However, in McNair v. State, 354 So.2d 473 (Fla.3d DCA 1978), because the officer saw the defendant's wife toss a gun inside, the search of an apartment after an arrest was made outside the residence was upheld. The possibility that someone inside could have access to the pistol "... constituted sufficient evidence of exigent circumstances." See also Grant v. State, 374 So.2d 630 (Fla.3d DCA 1979).
Both Newton and McNair cited United States v. Bowdach, 414 F. Supp. 1346 (S.D. Fla. 1976) affirmed 561 F.2d 1160 (5th Cir.1977). In Bowdach as in the case before us, the defendant was arrested outside a house. Nonetheless, the court held that the police had a right "to conduct a quick and cursory check of a residence when they have reasonable grounds to believe that there are other persons present inside the residence who might present a security risk." The officers believed that they were in jeopardy because of information that the defendant was a member of a "gang" which was under investigation. The reasonableness of the officers' belief should be measured by their perceptions prior to entry, and the scope of the search should be limited to what is minimally necessary to protect the officers from the perceived dangers. The seizure of evidence seen in plain view after entering the premises was held valid in Bowdach. Other federal cases upholding a "protective sweep" search and seizure of criminal evidence in plain view on the basis of exigent circumstances include United States v. Baker, 577 F.2d 1147, 1152 (4th Cir.1978) and McGeehan v. Wainwright, 526 F.2d 397 (5th Cir.1976).
At the hearing on the motion to suppress, the trial judge heard argument concerning the applicability of the exigency standard espoused in Newton and Bowdach. After hearing the evidence, the judge concluded that under the circumstances the officers had "reasonable grounds" to enter the house. Giving deference to the trial judge's interpretation of the facts, we agree. The officers were told only of the presence of the appellant. They were informed that he was probably armed and dangerous and that he had been involved in a shooting incident. Aware of the possibly dangerous situation, the several officers met a block away from the house before surrounding the home and spent fifteen minutes in talking appellant into coming outside. When one officer saw two shadowy figures inside, he relayed the information. The testimony consistently shows the officers' surprise in learning that more than one person occupied the house. Considering the gravity of the crime, the probability of weapons inside the house, and the surprise on learning that at least two people were *1045 inside, the officers acted reasonably to insure their safety by entering the home immediately after the arrest of appellant.
Appellant's third argument is that he was denied a speedy trial within the meaning of Florida Rule of Criminal Procedure 3.191 when his trial commenced more than 180 days after his arrest following an extension of the applicable time period on motion of the State.
In his order extending the time for trial the trial judge specifically found that a witness' testimony was uniquely necessary to the State and that her absence was unforeseeable and not due to any lack of diligence by the State. The granting of an extension of speedy trial for exceptional circumstances is a matter for the discretion of the trial judge. See, e.g., Talton v. State, 362 So.2d 686 (4th DCA 1978). Appellant has not shown an abuse of discretion in this case. The record reflects that the witness in question was under subpoena and in regular contact with the State Attorney but did not make her intended absence known until the night before trial. The record supports a determination that the State made diligent efforts to secure her presence. Further, the finding of the uniqueness of her testimony was appropriate in that her expected testimony included a statement that appellant had made an admission to her shortly after the alleged crime and she could place appellant in the same room where the weapon was located. Based upon the circumstances, the trial judge could extend the time for trial for a reasonable period of time.
Appellant's final argument is an attack upon the constitutionality of Florida Statutes section 947.16(3). That provision of the law has been upheld in the recent opinion of this court in Arnett v. State, 397 So.2d 330, (Fla. 1st DCA 1981).
Accordingly, the convictions and sentences of the trial court are AFFIRMED.
ROBERT P. SMITH, C.J., and LARRY G. SMITH, J., concur.