700 So.2d 1236 (1997)
Larry WESTBERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3340.
District Court of Appeal of Florida, First District.
September 16, 1997.
Rehearing Denied October 30, 1997.
Louis O. Frost, Jr., Public Defender, and Ward L. Metzger, Assistant Public Defender, Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
ALLEN, Judge.
The appellant challenges his convictions for two counts of attempted sexual battery, arguing that the trial judge abused his discretion in extending the time for speedy trial. In light of a factual concession made by the appellant's counsel on appeal, we reject the appellant's argument and affirm his convictions.
The appellant was arrested on December 29, 1995, for capital sexual battery. On January 11, 1996, an information charging him with two counts of capital sexual battery was filed. On January 17, 1996, the prosecutor filed a motion to compel the drawing of blood from the appellant for DNA comparison with the blood of the alleged victim and her baby. On January 19, 1996, upon learning the motion was unopposed, the judge granted the motion by written order. At a pretrial conference on February 28, 1996, the case was set for trial for May 6, although the sample had not yet been drawn. The judge asked the prosecutor what the problem was, and he replied, "I will be looking into it, and I don't see why we can't get that done by the beginning of next week." By the next pretrial conference on March 29, 1996, the sample had been drawn and the parties were awaiting the DNA testing results. On April 23, 1996, the results had still not come in, but the prosecutor promised to give an "update" on May 2.
At the May 2 pretrial conference, the prosecutor indicated that he would be moving for a continuance of the trial set for the following Monday because the DNA results had still not come in. Counsel for the appellant expressed a concern about speedy trial and *1237 stated that the appellant would not waive it. The judge noted:
We have been talking about DNA for three or four months. Isn't it possible to have it done through another source?
The prosecutor replied:
That's why I wanted a couple of weeks to see what other options we might have. Possibly we could send it to Tallahassee or Orlando.
The judge granted the prosecutor a continuance and set the next pretrial conference for May 16.
On May 16, the prosecutor indicated that he would like the case passed for two more weeks, and noted that speedy trial was not an issue until the end of June. The prosecutor said:
We were looking actually, Judge, the last time to try to suggest maybe shipping it out or something of that sort, but I think the time frame is going to be about the same.
The judge warned the prosecutor that if he did not have the DNA results by June 3, he would need to be ready to address the speedy trial issue with appropriate witnesses.
On June 3, the judge specifically asked the prosecutor his position on speedy trial, and he stated that he did not have a position on speedy trial. He agreed the case should be set for trial for June 24th, but indicated his intention to file a motion to extend speedy trial based upon the delay in the DNA testing. For the first time, the prosecutor represented that the delay had occurred as a result of changes in the Florida Department of Law Enforcement (FDLE) laboratory's testing methods, but he confessed that, "in all honesty I haven't checked this morning to find out what stage it's at, if it's far or if it's close to being finished."
The prosecutor filed a written motion to extend speedy trial and on June 20th a hearing was held on the motion. The prosecutor presented the testimony of James H. Pollock, a forensic serologist with FDLE. Pollock testified that the Jacksonville FDLE laboratory had received the samples on March 22, 1996, but at that time, the laboratory was "off-line" because it was converting its procedure. DNA testing resumed in May, and at the time of the hearing, two of the six steps had been completed on the samples. At that point, the appellant could not be eliminated as the father of the baby. Pollock testified that he expected the testing would be completed in four weeks. When asked if a trial date had been submitted with the samples, Pollock testified:
No. Absolutely not. There were no rushes attached to this case. There was nothing in the scenario that would indicate there was a speedy trial and there was no conversation with either the detectives or the State Attorney's Office until the second of May 1996.
In arguing at the June 20th hearing that the speedy trial time should not be extended, the appellant's trial counsel represented to the trial judge that the prosecutor had never made inquiry to determine whether the DNA testing could be completed on a timely basis by another laboratory. The prosecutor did not dispute this representation.
The judge granted the prosecutor's motion to extend speedy trial because "the lab was off-line in March and the entire month of April." In a subsequent written order, the judge stated that the prosecution had exercised due diligence in attempting to obtain the DNA results, that the evidence constituted a matter of substantial justice, and that the exceptional circumstances provision of Rule 3.191 had been met.
The appellant filed a notice of expiration of time for speedy trial on June 21, 1996. The judge disregarded the notice based on his prior ruling extending speedy trial. The appellant filed a motion for discharge on July 16, 1996, alleging that he had been held in custody for over 190 days (175 days plus the 15 day window period) without a trial and was entitled to discharge since the case had not been set for trial within the appropriate period after the filing of the notice of expiration of time for speedy trial. The motion was denied.
On August 23, 1996, the appellant entered pleas of no contest to the lesser included offenses of attempted sexual battery. He *1238 reserved the right to appeal the speedy trial issue.
The issue on appeal is whether the trial court erred in finding "exceptional circumstances" to extend the time period for speedy trial. "Exceptional circumstances" are defined in Florida Rule of Criminal Procedure 3.191(l), which provides in pertinent part:
As permitted by subdivision (i) of this rule, the court may order an extension of the time periods provided under this rule when exceptional circumstances are shown to exist. Exceptional circumstances shall not include general congestion of the court's docket, lack of diligent preparation, failure to obtain available witnesses, or other avoidable or foreseeable delays. Exceptional circumstances are those that as a matter of substantial justice to the accused or the state or both require an order by the court. Such circumstances include:
....
(3) a showing by the state that specific evidence or testimony is not available despite diligent efforts to secure it, but will become available at a later time....
We review the trial court's finding of exceptional circumstances under the abuse of discretion standard. See Routly v. State, 440 So.2d 1257, 1261 (Fla.1983). This means that the trial judge's ruling may be disturbed only if we conclude that it was arbitrary, fanciful, or unreasonable. A trial judge abuses his discretion only where no reasonable person would take the view adopted by the trial judge. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
The trial judge's ruling in this case very nearly amounts to an abuse of discretion because there is little upon which to base a finding that the prosecutor made the required "diligent efforts" to secure the DNA evidence in a timely fashion. Notwithstanding that the defense never opposed the prosecutor's motion to compel body samples, there was a delay of almost three months into the speedy trial period before the samples were even drawn. The prosecutor admitted that his office was responsible for the delays in taking the samples. And when the samples were submitted after half the speedy trial period had expired, the prosecutor did not inquire about how long it would take for the laboratory to process the samples. Because he did not inquire, it was almost six weeks later before he first learned that the laboratory had been "off-line" since before the samples were first submitted. And when he learned this, the record does not clearly reflect that he made any effort to expedite the process at the Jacksonville FDLE laboratory or to send the samples to either a private laboratory or a different FDLE laboratoryeven though he was prompted by the judge at the May 2 pretrial conference to explore such a possibility.
It does appear, however, that the DNA samples were submitted to the laboratory within a sufficient period of time to permit the completion of testing before the expiration of the speedy trial period if the laboratory personnel had been in a position to begin the testing promptly upon receipt of the samples. And the inability of the laboratory personnel to do so was not the fault of the prosecutor. A reasonable person might conclude that this "timely" submission amounted to a diligent effort to secure the DNA results.
We are nevertheless troubled by the absence of a clear indication in the record that the prosecutor followed up on the trial judge's suggestion of May 2, 1996, that the prosecutor try to secure timely testing of the DNA samples by another laboratory. If time remained on May 2, 1996, within which the testing could have been done by some laboratory reasonably available to the prosecutor, the prosecutor's obligation to exercise "diligent efforts" would seem to have required that he arrange the submission of the samples to that laboratory. The appellee argues that the prosecutor's remarks of May 16, 1996, indicate that he had inquired and had found no other laboratory that could do the testing within the speedy trial period. This seems to us a very strained reading of the prosecutor's May 16 remarks, particularly in light of the argument by the appellant's trial counsel on June 20, 1996. But our reservations regarding the appellee's reading of the record are removed by the concession made by the appellant's counsel on appeal *1239 that his understanding of the record is that by the time the prosecutor learned on May 2, 1996, that the FDLE laboratory had been off-line for many weeks and had done no testing on the DNA samples, it was then too late for any laboratory to complete the testing within the speedy trial period.
In light of the concession made by the appellant's counsel on appeal, we conclude that the trial court's extension of the speedy trial period did not amount to an abuse of discretion. We therefore affirm the appellant's convictions.
WEBSTER, J. concurs.
MICKLE, J., concurs in result only.